# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARYLAND CASUALTY COMPANY** § § | | **PLAINTIFF** |
| **VS.** § § | | **CAUSE NO. 1:09cv644-LG-RHW** |
| **ROBERT S. NESTLE, JR.; MELANIE S. NESTLE; and DEBORAH HUSBAND, d/b/a RAINBOW DAYCARE & PRE SCHOOL** § § § § § | | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER DENYING
## DEFAULT JUDGMENT AND DENYING SUMMARY JUDGMENT

BEFORE THE COURT are Plaintiff Maryland Casualty Company's Motion for Default Judgment Against Defendant Deborah Husband d/b/a Rainbow Daycare and Pre School [25] and Motion for Summary Judgment [26]. Maryland Casualty brought this declaratory judgment action to determine whether it owes her indemnity and a defense in a lawsuit brought by Defendants Robert S. and Melanie S. Nestle, individually and on behalf of their minor daughter. Maryland Casualty argues (1) there was no occurrence and (2) the Abuse and Molestation Exclusion applies. The Court has considered the parties' submissions and the relevant legal authority. There is a question of fact as to whether Maryland Casualty is estopped from denying coverage in the State court action. Default Judgment against Husband is denied.

## FACTS AND PROCEDURAL HISTORY

Defendants are Mississippi residents. The Nestles' daughter was enrolled in Rainbow Daycare. Husband is the sole proprietor of Rainbow. On November 16, 2007, the Nestles sued her in the County Court of Harrison County, Mississippi for alleged physical and mental abuse of their daughter by Husband and for her unknown employees' alleged failures to report this behavior. The Nestles brought negligence, gross negligence, negligence per se, negligent

supervision, and negligent infliction of emotional distress claims. The Nestles allege that she "negligently disciplined and/or cared for the minor . . . causing the minor . . . physical and mental pain and suffering, mental anguish and present and future medical treatment." (State Ct. Am. Compl. at 3 (¶10)). Husband's employees allegedly:

> observed the negligent and reckless behavior of Debbie Husband to include, but not limited to, the physical abuse of pinching the [daughter] with a claw toy, verbally terrorizing the minor of tender years and/or using kitchen utensils to physically discipline or threaten discipline of minor child and failed to report such conduct or take actions to prevent misconduct.

*Id.* at 4 (¶11). The Nestles allege negligent hiring, training, supervision, and retention. Husband is accused of negligence per se under Mississippi Code Annotated § 97-5-39(1) for the alleged pinching, terrorizing, and "using kitchen utensils to physically discipline" the daughter. *Id.* at 7 (¶19). This statute provides that anyone:

> who willfully commits any act or omission in the performance of any duty, which . . . contributes to or tends to contribute to the neglect . . . of any child or which . . . results in the abuse of any child, as defined in Section 43-21-105(m) . . . shall be guilty of a misdemeanor. . . . If the child's deprivation of . . . supervision appropriate to the child's age results in substantial harm to the child's physical, mental or emotional health, the person may be sentenced to imprisonment. . . . A . . . person who knowingly permits the continuing physical . . . abuse of a child is guilty of neglect of a child.

Miss. Code Ann. § 97-5-39(1) (2010). Section 43-21-105(m) provides:

> "Abused child" means a child whose . . . custodian . . . responsible for his care or support . . . has caused or allowed to be caused upon said child . . . emotional abuse, mental injury, nonaccidental physical injury or other maltreatment. Provided, however, that physical discipline, including spanking, performed on a child by a . . . custodian in an reasonable manner shall not be deemed abuse under this section.

The Nestles allege they "became aware of the actions of [Husband and her employees], when [the Nestles] witnessed the personal injuries, resulting in physical and mental pain and anguish

by [their daughter] and as a result have suffered and continued to suffer emotional distress. . . ." *Id.* at (¶21).

Maryland Casualty, a Maryland corporation with its principal place of business in Illinois, is Husband's commercial insurer. She notified it of the Nestles' lawsuit and asked that Maryland Casualty defend and indemnify her. On December 10, 2007, it denied that the policy covered the claims, but provided a defense to her under a reservation of rights. The reservation of rights letter did not inform her that there was a conflict of interest between her and the attorney Maryland Casualty was assigning to defend her nor that she had a right to choose her own counsel at Maryland Casualty's cost.

On August 26, 2009, Maryland Casualty brought this declaratory judgment action asking the Court to resolve its duties under the policy. On October 23, after an Entry of Default had been entered against Husband in the instant case, her State court attorney sent her a letter stating "it is my understanding that you are aware that Zurich [sic] is now reserving rights to pay any judgment in this cause but you still want me to represent you in this matter." (Pl.'s Reply Ex. 2).

Maryland Casualty now files a motion for default judgment against Husband and a Motion for Summary Judgment, arguing that the State court claims are not covered by the policy. The Nestles respond that Maryland Casualty is equitably estopped from denying a defense or coverage because Maryland Casualty did not apprise her of her right to *Moeller* counsel nor timely file this declaratory judgment action.

## DISCUSSION

<u>SUMMARY JUDGMENT</u>

A motion for summary judgment shall be granted "if the pleadings, depositions, answers

3

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## I. DUTY TO INSURE

Maryland Casualty argues the alleged conduct does not constitute an occurrence, and alternatively, the claims are excluded by the Abuse or Molestation Exclusion. The Nestles do not respond to this argument.

Maryland Casualty has two distinct obligations to its insured–(1) a duty to indemnify its insured for covered claims and (2) a duty to furnish a legal defense to certain claims. *Mimmitt v. Allstate County Mut. Ins. Co.*, 928 So. 2d 203, 207 (¶ 24) (Miss. Ct. App. 2006). Husband's insurance policy provides Maryland Casualty "will pay those sums that [she] becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies. [Maryland Casualty] will have the . . . duty to defend [her] against any 'suit' seeking those

4

damages." (Sprung Aff. Ex. 1 at 9). "This insurance applies: (1) to 'bodily injury' . . . only if: (1) The 'bodily injury' . . . is caused by an 'occurrence.'" *Id.* at 10. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 23. The policy contains an "Abuse or Molestation Exclusion" which provides:

> This insurance does not apply to "bodily injury" . . . arising out of:
>
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> 2. The negligent:
>
>    a. Employment;
>    . . .
>    c. Supervision;
>    d. Report to the proper authorities, or failure to so report; or
>    e. Retention;
>
>    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above.

*Id.* at 27. "Abuse" is not defined in the policy. The dictionary defines "abuse" as, "1 : a corrupt practice or custom; 2 : improper or excessive use or treatment; 3 *obsolete* : a deceitful act; 4 : language that condemns or vilifies usually unjustly, intemperately, and angrily; 5 : physical maltreatment." Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/abuse. "Maltreat" is defined as "to treat cruelly or roughly." Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/maltreat . Black's Law Dictionary defines "maltreatment" as "[b]ad treatment (esp. improper treatment by a surgeon) resulting from

ignorance, neglect, or willfulness." Black's Law Dictionary 971 (7th ed. 1999).

The Nestles' claims in the State court case are that Husband actually abused and threatened to abuse their daughter while she was in Husband's care, custody and control. The Nestles claim that other employees of Rainbow negligently hired, supervised and failed to report her conduct. All of these claims are excluded by the plain language of the abuse exclusion.

The only remaining claims the Court must consider are the parents' claims that they suffered negligent infliction of emotional distress upon discovering their daughter's injuries. Of course the parents' negligent infliction claim is one "arising out of" the "actual . . . abuse . . . by anyone [allegedly Husband] of any person [the Nestles' daughter] while in the care, custody or control of any insured [Husband]," as well as the alleged negligent employment, supervision and failure to report her. Therefore, coverage for the parents' claims are likewise excluded under the language of the policy.

The policy therefore provides no basis for indemnity in this case. Unless there is another source of this duty, Maryland Casualty is not liable to Husband for the State court judgment, if any.

II.     EQUITABLE ESTOPPEL

The Nestles argue that Maryland Casualty is equitably estopped from denying coverage or a defense because it failed to apprise Husband of her rights under *Moeller*. Maryland Casualty argues that the Nestles have no standing to raise this argument and no competent evidence to support it.

In a declaratory judgment action, an injured party has standing to establish coverage under a tortfeasor's insurance policy. *Johnson v. Great Am. Ins. Co.*, 213 F. Supp. 2d 657, 662

(S.D. Miss. 2001); *Titan Indem. Co. v. Williams*, 743 So. 2d 1020, 1023 (¶6) (Miss. Ct. App. 1999). This is because the injured party's rights to recover any judgment "clearly are affected by the terms of the policy." *Id.* The injured party does not have to obtain a judgment against the tortfeasor before litigating the coverage question. *Johnson*, 213 F. Supp. 2d at 662; *Titan*, 743 So. 2d at 1023 (¶4). Notably, the *Titan* case held that an injured student had standing to challenge whether the school's insurance policy's "abuse and molestation exclusion" excluded coverage for his claim and whether an additional insurance policy nonetheless covered his claim. *Id.* at 1022 (¶3). "Neither [the insurer] nor the [school] apparently felt compelled to seek resolution of the issue, so it was incumbent upon [the student] to pursue the matter." *Id.* at 1023 (¶6). Finally:

> where the injured party is expressly or impliedly given a right of action against insurer under . . . the terms of the policy, the injured person has the same rights as insured would have had if he had paid the judgment, and he has the benefit of any estoppel or waiver which operates in favor of the insured.

*S. Farm Bureau Cas. Ins. Co. v. Logan*, 119 So. 2d 268, 272 (Miss. 1960). The Nestles are parties allegedly injured by Husband and her employees and are current State court plaintiffs against Husband. The Nestles are parties to this declaratory judgment action in which Maryland Casualty seeks a judgment against them that the insurance company is not liable for any judgment that may be rendered against Husband. Mississippi law gives the Nestles a right of a garnishment and declaratory judgment action against Maryland Casualty. The Nestles therefore have standing to raise the issue of coverage by estoppel.

Under Mississippi law, when the insurer engages in misconduct that "concerns the duty to defend, the insurer may be liable despite an exclusion otherwise applicable." *Twin City Fire Ins.*

7

*Co. v. City of Madison*, 309 F.3d 901, 906 (5th Cir. 2002). The "general rule is that an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured." *S. Farm Bureau*, 119 So. 2d at 272. An insurer is also equitably estopped from denying coverage where the insurer does not apprise its insured of his rights to *Moeller* counsel and this works to the insured's prejudice. *Twin City*, 309 F.3d at 908.

For example, in *Southern Farm Bureau*, Logan was injured in an automobile accident, so he sued the owner and driver. *S. Farm Bureau*, 119 So. 2d at 269. Southern Farm Bureau told its insured that the policy did not cover the claim, but without waiving this defense, it offered to settle the case with Logan. *Id.* The insured was notified that if Southern Farm Bureau could not settle the case, the insurer would not defend or indemnify the insured. *Id.* When Logan did not accept the settlement offer, Southern Farm Bureau wrote a letter to its insured, refusing to defend or indemnify the claim. *Id.* at 270. On this same day, a default judgment was rendered against the insured. *Id.* Logan then filed a garnishment action against Southern Farm Bureau raising, among other things, the issue of equitable estoppel. *Id.* The court held that once the insurer took on the case to try to obtain a settlement, the insured "had a right to assume that insurer was looking after the case and would notify her if and when it was necessary for her to employ attorneys of her own." *Id.* at 272. She was prejudiced because the insurer did not withdraw its defense until the same day as the default judgment was rendered against her. *Id.* Therefore, Southern Farm Bureau was equitably estopped from denying her a defense and "was liable for the payment of the judgment secured by Logan." *Id.*

In *Twin City*, the Fifth Circuit reversed summary judgment where, although the policy

8

excluded the claim, there was a dispute of fact regarding equitable estoppel. *Twin City*, 309 F.3d at 909-10. At issue was whether the insured was adequately informed of its rights of defense under *Moeller*. *Id.* at 909. "If an insurer is defending under a reservation of rights, 'the insured should be immediately notified of a possible conflict of interest between his interests and the interests of his insurance company so as to enable him to give informed consideration to the retention of other counsel.'" *Id.* at 907 (quoting 7C John Alan Appleman, Appleman Ins. Law & Practice § 4694 at 365 (1979)). The court noted that under *Moeller*, "the carrier 'should afford the insured ample opportunity to select his own independent counsel to look after his interest.'" *Twin City*, 309 F.3d at 907 (quoting *Moeller v. Am. Guarantee & Liab. Ins. Co.*, 707 So. 2d 1062, 1070 (Miss. 1996)). The first two reservation of rights letters sent to the insured "did not identify Twin City at all but reserved rights to 'Hartford Insurance Co.'" and did not cite the reason ultimately used to exclude coverage. *Twin City*, 309 F.3d at 906. Five years later, with trial one month away, Twin City sent a third reservation of rights letter which finally identified Twin City as the insurer and the applicable exclusion. *Id.* at 906-07. None of the letters "offered . . . opportunity to the insured to select its own independent counsel. Rather, they referred the 'defense of this entire matter' to Levy [counsel retained by the insurance company to defend the City of Madison]." *Id.* at 907. "With this evidence Madison demonstrates an issue for trial, i.e., whether the notice to the insured of the conflict of interest was adequate, clear, and timely." *Id.* There was also:

> a genuine issue of fact regarding prejudice, because the very ruling obtained by Levy in favor of the City in [federal court][1] (that the IFO was a tax) was used

---

[1] The City of Madison was first sued in federal court. *Id.* at 904. That was dismissed for lack of subject matter jurisdiction. *Id.* The plaintiffs then sued the City in State court, which was

9

> against the City in this coverage dispute [over the state court settlement]. Had it
> known earlier, the City could have hired its own attorney who might have
> foregone the jurisdictional tax argument. . . . One might find that Madison
> learned only within that month before trial that its insurer had hired counsel to
> defeat coverage, was using Levy's work product against Madison, and was suing
> Madison for the costs of defense over the past five years.

*Id.* at 908.

More recently, the Northern District of Mississippi denied summary judgment for an insurer where there was evidence that the insured was not informed of his right to *Moeller* counsel. *Liberty Mut. Ins. Co. v. Tedford*, 658 F. Supp. 2d 786, 797 (N.D. Miss. 2009). It was undisputed that the insurer never informed the insured about "its Moeller rights or any conflicts of interests created by the insurer's defense pursuant to a reservation of rights." *Id.* at 796. There was a question of fact on prejudice because the insured had an adverse judgment rendered against it in the underlying tort action. *Id.* at 797. There was testimony that had the insured "been advised by Liberty Mutual that [the insured] had the right to choose independent counsel, [the attorney that Liberty Mutual had selected] would not have been the counsel [the insured] would have retained." *Id.* at 798.

There is a factual dispute as to whether Husband was advised of the conflicts of interests inherent in Maryland Casualty's reservation of rights and of her rights under *Moeller*. The Claims Case Manager for Maryland Casualty, Therese Sprung testified that a reservation of rights letter was sent to Husband on December 10, 2007. The letter quoted the policy language, including the Abuse and Molestation Exclusion. Then, "Notwithstanding the foregoing and without waiving its right to disclaim coverage at a later date, the company hereby advises you

---

settled. *Id.*

that it shall defend you against this lawsuit under a full and express reservation of rights." (Sprung Aff. Ex. 4 at 5). She was told that Maryland Casualty "referred the matter" to Ed Taylor "to defend you in this matter." *Id.* "Your interest under the terms and conditions of the insurance policy will be protected, subject to the reservation of rights." *Id.* Nothing in the letter informs Husband about regarding Taylor's potential conflict of interest. Nothing in this letter informs her that she has a right to choose independent counsel, for which Maryland Casualty will pay, subject to a later finding that Maryland Casualty had no duty to defend. *Moeller*, 707 So. 2d at 1071.

Maryland Casualty nevertheless points to its Response to Request for Admission wherein its attorney denied "that the insured was not provided the opportunity to select its own counsel at the insurer's expense after the Plaintiff's reservation of rights" and argues that the reservation of rights letter is incompetent evidence as to whether Husband was so informed because the Nestles have no personal knowledge of any conversations had between Husband and Taylor that may have later informed her of her *Moeller* rights. (Pl.'s Reply Ex. 1 at 3). First, the fact that there may be contradictory evidence simply underscores the fact that this is a jury question. Second, it was Maryland Casualty who offered the reservation of rights letter into evidence as probative on whether or not the duty of defense was breached. Third, the Court is offered no evidence that Taylor explained either his conflict of interest or her right to have independent counsel of her own choosing at Maryland Casualty's expense. The Court is only offered a letter from Taylor to Husband telling her "it is my understanding that you are aware that Zurich is now reserving rights to pay any judgment in this cause but you still want me to represent you in this matter." (Pl.'s Reply Ex. 2). The Court is also offered hearsay from Taylor to the insurance company

recounting a conversation with Husband. Notably, nowhere in this recounting does he claim to have informed her of her right to have counsel of her own choosing at Maryland Casualty's expense. Therefore, there is a question of fact as to whether or not Maryland Casualty breached its duties under *Moeller*.

If there is evidence that Husband was prejudiced by this alleged misconduct, then there is a fact question as to whether Maryland Casualty is equitably estopped from denying coverage. There has not yet been any adverse State court judgment against Husband. If one is entered against her, this could potentially form the basis for prejudice. However, it is too early to tell if she has been prejudiced in this manner.

Furthermore, an entry of default was entered against Husband in this case on October 1, 2009. Even by Plaintiff's account, she was not informed of the conflict of interest that Taylor had until twenty-one days after the entry of default. Viewed in the light most favorable to the non-movants, there is evidence that to this day she remains uninformed. There has been no default judgment and it is within this Court's power to deny default judgment.

Plaintiff argued on summary judgment that Husband's acts were intentional. Obviously this argument is counterproductive to her defense in the State court case, as the Nestles seek punitive damages. There is no prejudice because the Court did not, and need not, consider whether "[u]nder no circumstances could the actions allegedly perpetrated by Husband be deemed accidental." (Pl.'s Mem. Summ. J. at 10).

The only remaining issue is whether she is prejudiced by an inability to defend against this summary judgment motion. Maryland Casualty led her to believe Taylor will protect her "interest under the terms and conditions of the insurance policy," and, if Maryland Casualty did

recounting a conversation with Husband. Notably, nowhere in this recounting does he claim to have informed her of her right to have counsel of her own choosing at Maryland Casualty's expense. Therefore, there is a question of fact as to whether or not Maryland Casualty breached its duties under *Moeller*.

If there is evidence that Husband was prejudiced by this alleged misconduct, then there is a fact question as to whether Maryland Casualty is equitably estopped from denying coverage. There has not yet been any adverse State court judgment against Husband. If one is entered against her, this could potentially form the basis for prejudice. However, it is too early to tell if she has been prejudiced in this manner.

Furthermore, an entry of default was entered against Husband in this case on October 1, 2009. Even by Plaintiff's account, she was not informed of the conflict of interest that Taylor had until twenty-one days after the entry of default. Viewed in the light most favorable to the non-movants, there is evidence that to this day she remains uninformed. There has been no default judgment and it is within this Court's power to deny default judgment.

Plaintiff argued on summary judgment that Husband's acts were intentional. Obviously this argument is counterproductive to her defense in the State court case, as the Nestles seek punitive damages. There is no prejudice because the Court did not, and need not, consider whether "[u]nder no circumstances could the actions allegedly perpetrated by Husband be deemed accidental." (Pl.'s Mem. Summ. J. at 10).

The only remaining issue is whether she is prejudiced by an inability to defend against this summary judgment motion. Maryland Casualty led her to believe Taylor will protect her "interest under the terms and conditions of the insurance policy," and, if Maryland Casualty did

not explain the conflict of interest and give her an opportunity to employ independent counsel, Maryland Casualty effectively guaranteed itself a coverage judgment against her without an opportunity for her to be heard. Had she known, she could have appeared with independent counsel to address whether or not the policy covers the claims against her and whether she has been prejudiced in her State court case by Taylor's representation. As the State court case continues, it is too early to tell whether she will be prejudiced in the future by his representation.

### III. DUTY TO DEFEND

"Ultimate liability by the insurer is not dispositive of its duty to defend." *Merchs. Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611, 617 (S.D. Miss. 1992). "The duty to defend is broader than the insurer's duty to indemnify . . . the insurer has a duty to defend when there is any basis for potential liability under the policy." *Rogers v. Allstate Ins.* Co., 938 So. 2d 871, 875 (¶15) (Miss. Ct. App. 2006). The duty to defend is determined from the allegations in the Complaint, as well as any extrinsic evidence of which Maryland Casualty becomes aware. *Id.* If these arguably bring the claim within the coverage of the insurance policy, the duty to defend is triggered. *Am. Guarantee*, 273 F.3d at 610. On the other hand, if it is clear that the claims are not covered by the policy, then there is no duty to defend. *Id.* at 610-11.

Because there is a question of fact as to whether Maryland Casualty is estopped from denying coverage, Maryland Casualty is not entitled to summary judgment on its duty to defend.

### DEFAULT JUDGMENT

For the foregoing reasons, and because the Court reached the merits of the case, default judgment is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above,

Plaintiff Maryland Casualty Company's Motion for Default Judgment Against Defendant Deborah Husband d/b/a/ Rainbow Daycare and Pre School [25] should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [26] should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 17th day of September, 2010.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE